UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

YVONNE THORNTON, as Guardian
and Natural Parent of C.T.,
a minor,

    Plaintiff,

v.                          Case No.: 8:18-cv-260-T-33MAP

CHAD CHRONISTER, in his
official capacity as Sheriff
of Hillsborough County, Florida,
et al.,

    Defendants.
_____/

## ORDER

This matter comes before the Court pursuant to Defendants the Florida State Fair Authority's Motion to Dismiss (Doc. # 13), Sheriff Chad Chronister's Motion to Dismiss (Doc. # 17), and Deputies Henry Echenique, Mark Clark, Stephen Jones, and Adrian Chester's Motion to Dismiss (Doc. # 16), filed on February 23 and March 6, 2018. Plaintiff Yvonne Thornton, as guardian and natural parent of C.T., a minor, responded on March 30, 2018. (Doc. ## 45-46, 48). The Motions are granted as set forth herein.

## I.  Background

For many years, "students of Hillsborough County schools have been given a day off from school and provided with free

1

admission to an event current[ly] known as 'Student Day' at the Florida State Fairgrounds." (Doc. # 1 at ¶ 17). On February 7, 2014, C.T., the minor son of Thornton, attended Student Day with his friend Andrew Joseph III. (Id. at ¶ 42).

The Hillsborough County Sheriff's Office provides security for Student Day. (Id. at ¶ 19). Sheriff Chronister was "aware based on the large number of juveniles expected to attend, that specific definitions and standards of conduct needed to be established so that deputies and other security personnel at Student Day would know what conduct was prohibited." (Id. at ¶ 23). He "was further aware and on notice due to the large numbers of juveniles expected to attend and due to [] past experiences in previous years' Student Day events, that specific, uniform procedures needed to be established for the 2014 Student Day for the deputies to employ in the process of conducting arrests, detentions, ejectments and trespasses of juveniles." (Id. at ¶ 24).

Despite that knowledge, deputies were simply advised "to be alert for 'unruly' behavior" and "that they had the option, at their discretion, to eject or trespass students if the deputies felt it was warranted in his or her individual discretion, or that they could place the student under arrest." (Id. at ¶¶ 34-35). Thornton alleges that such

discretion was wrongfully exercised on C.T. and Andrew. Around eight that night, C.T. "was detained and placed in custody by [Hillsborough County Sheriff's Office] deputies for alleged 'disorderly conduct' without cause or legal justification." (Id. at ¶ 43). "At the time of his de facto arrest, C.T. [] was not disorderly, was in violation of no law, and was not smoking or drinking alcohol or using any other intoxicant." (Id. at ¶ 44).

C.T. "was then taken into custody and was then taken or transported by deputies to the processing area." (Id. at ¶ 46). At no point during his detention, transport, or ejection were C.T.'s parents notified and C.T. "was given no assistance or opportunity to make a phone call." (Id. at ¶ 47). Unfortunately, C.T. had been relying on Andrew's cell phone, which was either taken away or broken. (Id. at ¶ 46). And, "[o]nce [] student detainees [like C.T.] had been transported to the processing area by whatever means, they were dropped off there and the deputies returned to the Fairgrounds." (Id. at ¶ 36). "Deputies who escorted students to the temporary processing area were not instructed to stay with their detainees or supervise their processing, detention or release" — instead deputies were free to leave after filling out paperwork for their detainees. (Id. at ¶ 37). Furthermore,

"the temporary processing area was understaffed and unable to efficiently process the student detainees brought there by deputies from the event." (Id. at ¶ 39).

Like other minors to be ejected but not arrested, C.T. and Andrew were transported after processing to Gate 4 where they were "simply shown to the door and told to exit the facility." (Id. at ¶¶ 47-48). Gate 4 is a gate adjacent to the busy Interstate 4, and was not the gate at which C.T. and Andrew had been dropped off or were scheduled to be picked up. (Id. at ¶¶ 27-28, 49). "[B]ecause of fencing and other barriers on and around the Fairgrounds, there was no clear path or area that could be safely traversed on foot from outside Gate 4 back to the US [Highway] 301 side" — where C.T. and Andrew, like most other attendees, had been dropped off and entered the fair. (Id. at ¶ 28). "The only direct route, as well as the safest route to return to the parking lots and adjacent entrance Gates from outside Gate 4 was to return into the Fair through Gate 4 and walk east back through the Fair itself." (Id.). Making matters worse, "[v]ehicular access from outside the Fairgrounds to that portion of the Fairgrounds property where the boys were located was prohibited that night," so the boys could not be picked up at Gate 4. (Id. at ¶ 50).

At first, C.T. and Andrew waited around the area outside of Gate 4, but "a deputy in a patrol car drove up and told the boys that they could not stay where they were." (Id. at ¶ 51). In the hope of getting back to the gate at which they would be picked up, C.T. and Andrew asked the deputy at Gate 4 to let them travel back through the fair or to give them a ride to the gate they needed. (Id. at ¶¶ 52-53). The deputy refused the request, but gave C.T. and Andrew directions on how to walk back to the gate they needed on the other side of the fairgrounds. (Id. at ¶¶ 52-53, 54). The route the deputy described would cover 2 to 3 miles and required the boys to cross Interstate 4, "then walk in an easterly direction generally following the direction of I-4 until they reached U.S. [Hihgway] 301, at which point they could head south following 301 back to the entrance area of the Fairgrounds." (Id. at ¶¶ 54-55).

Feeling out of options, C.T. and Andrew took the deputy's advice. They crossed Interstate 4 and walked towards the entrance gates of the Fairgrounds. (Id. at ¶ 56). When C.T. and Andrew attempted to cross Interstate 4 back to the Fairgrounds, "Andrew was struck and killed by a passing motorist," as twelve-year-old C.T. watched. (Id. at ¶ 57). As a result, Thornton alleges C.T. suffered the "infliction of

emotional distress" as well as "pain and suffering." (Id. at ¶ 70).

Thornton initiated this action on C.T.'s behalf on January 31, 2018, asserting negligence claims against the Hillsborough County School Board, the Florida State Fair Authority, Sheriff Chronister, and four Defendant Deputies, as well as 42 U.S.C. § 1983 claims against the Defendant Deputies and Sheriff Chronister. (Doc. # 1). Thornton alleges that, because of Defendants' negligence and allegedly insufficient policies or lack thereof regarding the detention and ejectment of minors, C.T. was "improperly detained, taken into custody and transported off the Fairgrounds property to a location in the immediate vicinity of Interstate 4," where C.T. watched his friend be struck and killed by a motorist. (Id. at ¶ 138).

Each Defendant moved to dismiss. (Doc. ## 13-14, 16-17). Subsequently, Thornton voluntarily dismissed the claim against the Hillsborough County School Board. (Doc. # 47). Thornton responded in opposition to the Motions from the State Fair Authority, Sheriff Chronister, and the Deputy Defendants. (Doc. ## 45-46, 48). The Motions are ripe for review.

## II. **Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

III. **Analysis**

The Court will address each Defendant's arguments in turn.

A.    **The State Fair Authority**

The State Fair Authority argues that the sole claim against it, Count III for negligence, should be dismissed with prejudice for failure to give the statutorily-required notice of intent to sue. (Doc. # 13).

"Pursuant to Fla. Stat. § 768.28, to benefit from [Florida's waiver of sovereign immunity for tort claims], a claimant must provide written notice of any claim before filing suit." Doe v. G-Star Sch. of the Arts, Inc., No. 16-CV-80446, 2016 WL 4625625, at *4 (S.D. Fla. Sept. 6, 2016). Section 768.28(6)(a) states:

> An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality, county, or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, **within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing**; except that, if:
>     1. Such claim is for contribution pursuant to s. 768.31, it must be so presented within 6 months after the judgment against the tortfeasor seeking contribution has become final by lapse of time for appeal or after appellate review or, if there is no such judgment, within 6 months after the tortfeasor

> seeking contribution has either discharged the
> common liability by payment or agreed, while the
> action is pending against her or him, to discharge
> the common liability; or
>     2. Such action is for wrongful death, the
> claimant must present the claim in writing to the
> Department of Financial Services within 2 years
> after the claim accrues.

Fla. Stat. § 768.28(6)(a)(emphasis added). Furthermore, these

statutorily-required notices are "conditions precedent to

maintaining an action." Fla. Stat. § 768.28(6)(b). Strict

compliance with Section 768.28(6) is required. <u>Rumler v.</u>

<u>Dep't of Corrs.</u>, 546 F. Supp. 2d 1334, 1344 (M.D. Fla. 2008).

Here, the negligence claim accrued on February 7, 2014—

the day C.T. attended Student Day. The State Fair Authority

notes that Thornton did not send it a notice of intent to sue

until January 22, 2018 — after the three-year deadline. (Doc.

# 13 at 4, 7-10). Thus, the State Fair Authority argues Count

III must be dismissed with prejudice because Thornton cannot

cure the late notice. (Doc. # 13 at 4).

In response, Thornton first argues that sufficient

notice of intent to sue was given to the State Fair Authority

in December of 2014. (Doc. # 46 at 2). Yet, a review of the

notice attached to Thornton's response reveals that it was

not sent by Thornton regarding Thornton's claims. (Doc. # 46-

1). Rather, the notice was sent by the friend Andrew Joseph's

estate to the State Fair Authority. Although the notice generally says it is notifying the State Fair Authority of "any and all other available causes of action arising from the death of Andrew Joseph III," the notice states that it is alerting the State Fair Authority "of the intent of the Estate of Andrew Joseph, III, to file a tort claims action." (Id.). Thornton is not mentioned as a claimant, nor are her specific claims related to C.T. Section 768.28(6)(a) requires that "the claimant" must present his or her claim to the appropriate state agency. Thus, Thornton was required to present her claim to the State Fair Authority. She cannot piggy-back on the timely notice sent by a different claimant regarding different claims.

Next, Thornton argues that the three-year time limit to give notice does not apply to her claim. Rather, she argues the exception for contribution claims applies because she is suing multiple Defendants as joint tortfeasors. (Doc. # 46 at 3-4). Thornton misunderstands the statute. There is a six-month deadline for a joint tortfeasor to bring a claim for contribution against the state agency tortfeasor "after the judgement against the tortfeasor seeking contribution has become final." Fla. Stat. § 768.28(6)(a). Here, there is no judgment upon which a joint tortfeasor is seeking

contribution from the State Fair Authority. Rather, Thornton is a claimant seeking damages for negligence from the State Fair Authority — a fact unchanged by the existence of multiple other Defendants. Thus, she had to give notice of her intent to sue to the State Fair Authority and the Florida Department of Financial Services within three years after the accrual of the claim. The negligence claim accrued on February 7, 2014, so Thornton had until February 8, 2017, to give notice. She failed to do so.

Consequently, the Court agrees with the State Fair Authority that Thornton's negligence claim against it must be dismissed. See Tozier v. City of Temple Terrace, No. 8:10-cv-2750-T-33EAJ, 2011 WL 3961816, at *3 (M.D. Fla. Sept. 8, 2011)("As Tozier failed to comply within the statutorily prescribed noticing period, which is a condition precedent to filing state tort causes of action for false arrest, trespass/invasion, and assault/battery against Defendant City of Temple Terrace, Tozier is precluded from filing this suit as to these state torts against the City of Temple Terrace or any of the officers in their official capacities.").

"Generally, an action pursued without first satisfying the statutory notice provision must be dismissed without prejudice, so that plaintiff may amend his complaint to comply

11

with the requirement." <u>Doe</u>, 2016 WL 4625625, at *4. "However, where the time for notice has expired and it is evident that the plaintiff cannot fulfill the requirement, a dismissal with prejudice is warranted." <u>Id.</u>; <u>see also</u> <u>Levine v. Dade Cty. Sch. Bd.</u>, 442 So. 2d 210, 213 (Fla. 1983)("Where the time for such notice has expired so that it is apparent that the plaintiff cannot fulfill the requirement, the trial court has no alternative but to dismiss the complaint with prejudice."). Here, the time to give notice has expired such that Thornton cannot fulfill the notice requirement. Therefore, Count III is dismissed with prejudice.

## B.   <u>Sheriff Chronister</u>

Thornton asserts a claim for negligence and a claim under § 1983 against Sheriff Chronister. Sheriff Chronister argues that Count I for negligence should be dismissed with prejudice for lack of notice. (Doc. # 17 at 4-7). Just as she did for the State Fair Authority, Thornton sent Sheriff Chronister the Section 768.28 notice on January 22, 2018. (Doc. # 17-1). Thus, Thornton sent the notice over three years after the negligence claim accrued on February 7, 2014. Accordingly, Count I for negligence is dismissed with prejudice. <u>See</u> <u>Doe</u>, 2016 WL 4625625, at *4 ("[W]here the time for notice has

expired and it is evident that the plaintiff cannot fulfill the requirement, a dismissal with prejudice is warranted.").

Next, Sheriff Chronister argues that the § 1983 claim against him, Count VIII, should be dismissed. (Doc. # 17 at 18). Although the Court has determined that Thornton has failed to give pre-suit notice, "Section 768 does not apply to § 1983 claims." Gregory v. City of Tarpon Springs, No. 8:16-cv-237-T-33AEP, 2016 WL 7157554, at *10 (M.D. Fla. Dec. 8, 2016)(citing Majette v. O'Connor, 811 F.2d 1416, 1418 (11th Cir. 1987)), appeal dismissed, No. 17-10072-D, 2017 WL 6887300 (11th Cir. Feb. 14, 2017).

"[A] municipality may not be held liable under § 1983 solely because it employs a tortfeasor." Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403 (1997). Rather, to recover damages from a local governmental entity under § 1983, a plaintiff must show: "(1) that [his] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004)(citation omitted).

A plaintiff seeking to impose liability on a municipality under § 1983 must identify a particular policy

or custom that caused the constitutional injury. Bd. of Cty. Comm'rs of Bryan Cty., 520 U.S. at 403.

> A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. . . . A custom is a practice that is so settled and permanent that it takes on the force of law.

Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999)(citation omitted); see also Griffin v. City of Opa-Locka, 261 F.3d 1295, 1307 (11th Cir. 2001).

"In order for a plaintiff to demonstrate a policy or custom, it is 'generally necessary to show a persistent and wide-spread practice.'" McDowell, 392 at 1290 (citation omitted). "[T]he practice must be extensive enough to allow actual or constructive knowledge of such customs or policies to be attributed to the governing body of the municipality. Normally random acts or isolated incidents are insufficient to establish a custom or policy." Daniel v. Hancock Cty. Sch. Dist., 626 Fed. Appx. 825, 832 (11th Cir. 2015)(internal quotation marks and citations omitted). The plaintiff must additionally show the policy or custom was the moving force that caused the constitutional violation. McElligott v. Foley, 182 F.3d 1248, 1259 (11th Cir. 1999); Young v. City of Augusta, 59 F.3d 1160, 1171 (11th Cir. 1995).

According to Sheriff Chronister, Count VIII fails to state a claim under § 1983 because Thornton does not identify the constitutional right she alleges Sheriff Chronister violated or the policy or practice that was the moving force behind that violation. (Doc. # 17 at 18-20). True, the Complaint does not clearly state which of C.T.'s constitutional rights were violated. Nor does the Complaint identify a specific policy or practice of Sheriff Chronister's. Rather, the apparent basis for this claim is Sheriff Chronister's "failure [] to develop, implement, and administer such policies and procedures as set forth" in the Complaint regarding how minors should be detained and ejected from the fair on Student Day. (Doc. # 1 at ¶ 138). As a result of this failure, C.T. "was improperly detained, taken into custody and transported off the Fairgrounds property to a location in the immediate vicinity of Interstate 4." (Id.).

Thornton argues that there is no "outright requirement that Plaintiff plead exactly what constitutional right was violated." (Doc. # 48 at 8-9). Still, she highlights the allegations that C.T. was improperly detained, a violation of the Fourth Amendment. (Id. at 9). Also, Thornton notes her allegation that the failure to adopt specific policies and procedures to deal with detaining or ejecting minors from

Student Day constituted "a deliberate indifference to the safety of the children in the custody of the [Hillsborough County Sheriff's Office] deputies and security personnel and a deliberate indifference to their constitutional rights." (Doc. # 48 at 11)(quoting (Doc. # 1 at ¶ 137)). Specifically, she argues Sheriff Chronister should have implemented "specific policies and procedures . . . to govern the taking of children into custody by deputies providing security" at Student Day, "specific policies, procedures and safeguards . . . governing the transport, release and ejection of children who had been taken into custody for the purposes of arrest, temporary detention, trespass or eviction," and a "parental notification policy and procedure." (Doc. # 1 at ¶¶ 135-36). According to Thornton, there was an "obvious need to implement appropriate policies and procedures to address the likelihood and foreseeability of danger to children" at Student Day, which the Sheriff's Office ignored. (Id. at ¶ 137).

These allegations fail to state a claim against Sheriff Chronister. Although the Complaint contains conclusory allegations that there was an "obvious need" for certain procedures at Student Day and that ignoring such need constituted "deliberate indifference" (Id.), the Court is not bound to accept those allegations. Iqbal, 556 U.S. at 678;

*Papasan*, 478 U.S. at 286. No other similar incidents at past Student Days have been alleged, nor have facts been alleged to support that such danger was obvious.

As they stand, the well-pled allegations show only — albeit unfortunately — that two minor friends were wrongly detained and ejected from the fair for disorderly conduct, were refused a ride (or other passage through the fair) back to the gate through which they had entered, and instead were instructed that they could walk to the desired gate by crossing a busy interstate, during which crossing one minor was struck and killed by a passing motorist. *See* *McDowell*, 392 F.3d at 1290-91 ("While McDowell's case is tragic, he cannot point to another occasion when the Jail's understaffing, and resulting inability to transport, contributed to or exacerbated an inmate's medical condition. Simply put, this isolated incident, however unfortunate, does not demonstrate evidence of the County's 'persistent' or 'widespread' policy of understaffing the Jail so as to delay the transfer of inmates to [the hospital]."). And, importantly, § 1983 requires more than mere negligence. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986).

Finally, Sheriff Chronister argues that Thornton is precluded from seeking damages for mental or emotional

damages under Florida's "impact rule." (Doc. # 17 at 21-25).
But he cites no case law applying the "impact rule" to a §
1983 claim. Therefore, the Court is not persuaded that the
impact rule limits the damages Thornton may seek in Count
VIII.

Count VIII is dismissed for failure to state a claim.
But the Court grants Thornton one opportunity to amend this
§ 1983 claim.

### C. **Defendant Deputies**

### 1. **Negligence Claims**

In Counts IV to VII, Thornton brings claims for
negligence against each of the Defendant Deputies in his
individual capacity. (Doc. # 1 at 25-33). The Defendant
Deputies contend they are entitled to sovereign immunity for
the negligence claims under Fla. Stat. § 768.28(9)(a). (Doc.
# 16 at 5-7). Section 768.28(9)(a) states:

> No officer, employee, or agent of the state or of
> any of its subdivisions shall be held personally
> liable in tort or named as a party defendant in any
> action for any injury or damage suffered as a result
> of any act, event, or omission of action in the
> scope of her or his employment or function, unless
> such officer, employee, or agent acted in bad faith
> or with malicious purpose or in a manner exhibiting
> wanton and willful disregard of human rights,
> safety, or property.

Fla. Stat. § 768.28(9)(a). As the Defendant Deputies note, the Complaint alleges that they were "negligent with respect to their treatment of C.T." and were "working within the course and scope of their employment as law enforcement officers." (Doc. # 16 at 7; Doc. # 1 at ¶¶ 86, 96, 98, 108, 110, 120, 122, 132).

The Complaint does not allege that Defendant Deputies "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Instead, Thornton points out her allegations in the § 1983 claims that each Defendant Deputy acted with "deliberate indifference" to the safety of children in their custody and those children's constitutional rights, which Thornton contends is sufficient to avoid sovereign immunity for the negligence claims. (Doc. # 45 at 3). Alternatively, Thornton "is agreeable to dismissing [the negligence counts] without prejudice should discovery later afford [her] to establish the extent of this behavior so that [Thornton] may move to amend the Complaint to add same." (Id.).

All the allegations against the Defendant Deputies are conclusory. Even if Thornton had actually alleged that the Defendant Deputies acted with malicious purpose or in a manner

exhibiting wanton and willful disregard of human rights and safety, the Court need not have accepted such conclusory allegations. Iqbal, 556 U.S. at 678; Papasan, 478 U.S. at 286. The Complaint does not contain individualized allegations about each Defendant Deputy's conduct in the factual allegations. Rather, the negligence counts merely state (in identical language) that each Defendant Deputy detained C.T. in custody, decided to eject C.T. from the fair, and refused to let C.T. re-enter the fair to get to the regular entrance or to give C.T. a ride to the regular entrance. (Doc. # 1 at ¶¶ 87-90, 99-102, 111-114, 123-126). So, for example, it is unclear which Defendant Deputy actually declined C.T.'s request to walk back through the fair or to get a ride. (Id. at ¶¶ 53-55). Such unspecific allegations do not support the inference that the Defendant Deputies acted with wanton and willful disregard for C.T.'s rights and safety.

The Court dismisses the negligence claims against the Defendant Deputies without prejudice, so that Thornton may amend these claims in her amended complaint if she chooses.[1]

_____

[1] The Court emphasizes that it is not validating Thornton's assumption that she later, at some unspecified time, will be able to amend and add negligence claims against the Defendant Deputies again after the benefit of discovery. The Case

Because the negligence claims must be repled, the Court need not address whether the "impact rule" bars recovery of mental or emotional damages based on the allegations as pled in the Complaint.

## 2. Section 1983 Claims

In Counts IX to XII, Thornton asserts § 1983 claims against the Defendant Deputies in their individual capacities. (Doc. # 1 at 35-43). Thornton has labelled these counts as "Custom, Practice & Policy" claims against each Defendant Deputy in his individual capacity. (Id.). And the Complaint does not contain individualized allegations about the Defendant Deputies' allegedly unconstitutional conduct. Instead, the allegations under each count — largely cut-and-pasted from the § 1983 claim against Sheriff Chronister — assert that each Defendant Deputy was aware of the need for policies and procedures for Student Day to protect students' rights and safety. But, despite this knowledge, the individual Deputies "fail[ed] and refus[ed] to implement those practices and policies that were obviously necessary

_____

Management and Scheduling Order has set the motions to add parties and amend pleadings deadline as May 21, 2018. (Doc. # 38 at 1).

for the protection and safety of children such as C.T." (Id. at ¶¶ 146, 153, 160, 167).

The Court agrees with Defendant Deputies that Thornton has merely "assert[ed] conclusory and vague 'custom and policy' allegations that can only be made against the Sheriff's Office, not the Deputy Defendants in their 'individual capacities.'" (Doc. # 16 at 8). The allegations that the Defendant Deputies, who are not alleged to be policymakers for the Sheriff's Office, violated C.T.'s constitutional rights by failing to implement certain practices and policies for Student Day does not state a claim. Nor does the Complaint contain other non-conclusory allegations that the Defendant Deputies personally violated C.T.'s constitutional rights.

Counts IX to XII are dismissed for failure to state a claim. The Court will give Thornton another opportunity to plead her claims against the Defendant Deputies, based on their individual conduct rather than their alleged failure to establish practices and policies for the Sheriff's Office.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant the Florida State Fair Authority's Motion to Dismiss (Doc. # 13) is **GRANTED.** Count III is **DISMISSED**

**WITH PREJUDICE** and the State Fair Authority is terminated as a party to this action.

(2) Defendant Sheriff Chad Chronister's Motion to Dismiss (Doc. # 17) is **GRANTED.** Count I, for negligence, is **DISMISSED WITH PREJUDICE.** Count VIII under, 42 U.S.C. § 1983, is **DISMISSED WITHOUT PREJUDICE.**

(3) Defendant Deputies Henry Echenique, Mark Clark, Stephen Jones, and Adrian Chester's Motion to Dismiss (Doc. # 16) is **GRANTED.** Counts IV to VII, for negligence, are **DISMISSED WITHOUT PREJUDICE.** Counts IX to XII, under § 1983, are **DISMISSED WITHOUT PREJUDICE.**

(4) Plaintiff Yvonne Thornton may file an amended complaint by **April 25, 2018.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>10th</u> day of April, 2018.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE